## Waer Bus Company, Appellant, v. Public Service Commission et al.

Argued March 15, 1935.

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker, James and Rhodes, JJ.

*Everett Kent,* for appellant.

*William J. Wilcox,* and with him *E. G. Hauff,* for Lehigh Valley Transit Company and Lehigh Valley Transportation Company, interveners.

*Samuel Graff Miller* and *Richard J. Beamish,* with them *Paul H. Rhoads* and *E. Everett Mather, Jr.,* for Public Service Commission, appellee.

Opinion by Baldrige, J., April 15, 1935:

The Lehigh Valley Transit Company and the Lehigh Valley Transportation Company filed a complaint with the Public Service Commission, alleging that they are public service corporations, engaged, inter alia, in the business of transporting passengers as common carriers between the cities of Easton and Allentown; that on or about May 5, 1934, appellant transported a group of persons from Easton to the city of Allentown without legal authority to do so; that the appellant resorted to a subterfuge to evade the law by having the passengers cross the Delaware River at Easton, Pennsylvania, the actual place of origin of the carriage, to the town of Phillipsburg, New Jersey, to board appellant's bus.

An answer was filed by the appellant, denying an evasion of the law and alleging that it is a corporation engaged in the interstate transportation of persons, and that its actions are not within the jurisdiction of

the Public Service Commission of Pennsylvania; that the carriage complained of originated in Phillipsburg, New Jersey, and was an interstate movement.

The commission, after a hearing, sustained the contention of the petitioners, and ordered the appellant to cease and desist from operating its motor vehicle buses for the transportation of passengers within the Commonwealth of Pennsylvania in a manner not authorized by its certificate of public convenience.

The testimony upon the part of the complainants was confined to a witness, a bus operator for the Lehigh Valley Transportation Company, who testified that he saw a group of persons, who composed a theatrical company, leave Easton, cross the Delaware River, and enter appellant's bus in Phillipsburg, which carried them to Allentown; that the Lehigh Valley Transportation Company had negotiated unsuccessfully for the transportation of this group.

The testimony in behalf of the appellant was confined to that given by Mark J. Waer, its president. He testified that a man came to his office in Easton and asked if his company could move a group of people from Easton to Allentown and other points in the western part of this state, and he told him his company did not have a certificate for moving people from Easton to points in Pennsylvania, but that the Lehigh Valley Transportation Company did; that later the same man returned to his office and asked if this group could be transported from a point in New Jersey to Allentown, and the witness told him that his company could do that; thereupon arrangements were made that the persons would be at the Union Square in Phillipsburg at 11:30 on the night of May 5th; that he did not know where they came from, but they were at the point agreed upon, entered the bus, and the transportation was completed.

We recognize that it is not for this court to determine the expediency or wisdom of the commission's order, provided it is not so manifestly unreasonable or not in conformity with law as to justify a reversal: Vance Trans. Co. v. P. S. C., 105 Pa. Superior Ct. 228, 161 A. 428; York Express Co. v. P. S. C., 110 Pa. Superior Ct. 197, 168 A. 327. The question before us, therefore, is: Was there sufficient evidence to justify the commission in concluding that the appellant's conduct amounted to a subterfuge, in that the operation complained of did, in fact, originate in Easton and not in Phillipsburg?

It is conceded upon the part of the commission that if the group carried by the appellant had originated in New Jersey, it would have no jurisdiction. We are not unmindful that the general rule is that a common carrier can not, by employing artifice, escape regulation. If appellant's bus had taken on the passengers in Easton and had gone to Phillipsburg and immediately returned to Easton, and then proceeded to Allentown, that would have been a clear subterfuge that would have warranted the commission's action.

In the case of Nevin Bus Lines, Inc. v. P. S. C., 99 Pa. Superior Ct. 370, we remitted the record for more definite facts, but we strongly intimated that if the respondent was starting its trips within Pennsylvania for a destination in another part of the state, and, instead of following the direct and ordinary route, made a slight detour into Maryland for the purpose of evading the regulations of the Public Service Commission and the laws of this Commonwealth, that would be regarded as an intrastate carriage of passengers and would come within the jurisdiction of the Public Service Commission. There, the termini were in Pennsylvania. The crossing of the state line was an obvious scheme to avoid regulation in this state, as it was also in Phila. Rural Transit Co. v. Waer Bus Co., 9 Pa.

P. S. C. 732, where the commission properly found that the operation by the respondent between Easton and Philadelphia by way of Phillipsburg and Reigelsville, New Jersey, was a subterfuge; or as in Penna. Greyhound Transit Co. v. Harrisburg Sight Seeing Bus Co., 11 Pa. P. S. C. 737, where a football team was transported from Selinsgrove to Haverford, a suburb of Philadelphia. Immediately after the game, played at the latter place, the group was taken to Camden for dinner and then carried back to Selinsgrove. Obviously, that was a thinly veiled effort to give the appearance of an interstate carriage. Similar facts appear in Interstate Motor Transit Co. v. Pub. Utilities Com., 119 Ohio 264, 163 N. E. 713, where the carriage was started in the state of Ohio, crossed the Ohio River to give it the character of an interstate movement, and immediately returned to the same point in Ohio. In each of these cases, the carriage originated and terminated in the same state. We think they do not rule the case at hand, as, above observed, the actual carriage originated in New Jersey and ended in Pennsylvania. Whether the trip began just across the state line in Phillipsburg, New Jersey, or at some other point in that state, or how the passengers reached the place of origin, or that the group was induced by economic or other reasons to enter New Jersey are not controlling matters. The appellant, as an interstate carrier, had the right to have its bus at Phillipsburg, or at any other point within the state of New Jersey, for interstate movement, without inquiring into or determining the motives that prompted persons to patronize its bus line.

Our conclusion is that the carriage complained of was an interstate movement and not within the jurisdiction of our Public Service Commission. The petition of the interveners in this appeal should have been dismissed.

The order of the Public Service Commission is reversed.