533 A.2d 491

Community Car Pool Service, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

74

Argued September 18, 1987, before Judges COLINS, PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Norman P. Zarwin,* with him, *Aaron S. Friedman, E. Harris Baum, Mitchell S. Kaplan, Zarwin, Baum, Resnick & Cohen, P.C.,* for petitioner.

*R. Knickerbocker Smith, Jr.,* Assistant Counsel, with him, *Michael C. Schnierle,* Deputy Chief Counsel, *Daniel P. Delaney,* Chief Counsel, for respondent.

*James F. Kilcur,* with him, *G. Roger Bowers, Eugene N. Cipriani,* Amicus Curiae, Southeastern Pennsylvania Transportation Authority.

OPINION BY JUDGE COLINS, November 12, 1987:

Community Car Pool Service, Inc. (COMVAN), a for-profit, third-party provider of vanpooling services, seeks review of an order of the Public Utility Commission (Commission). The Commission initiated a complaint against COMVAN by order dated January 9, 1985, wherein it was alleged that COMVAN had violated Section 1101 of the Public Utility Code, 66 Pa. C. S. §1101, by providing transportation for compensation between points within the Commonwealth without a Certificate of Public Convenience. COMVAN filed its answer on April 9, 1985, admitting the conduct of such operations but alleging that such transportation was not subject to Commission jurisdiction pursuant to the statutory exemption provided for by the Ridesharing Arrangements Act, Act of December 14, 1982, P.L. 1211, 55 P.S. §695 (The Ridesharing Act).

The facts in this matter are undisputed. COMVAN is operated by its owner, Ms. Janine Tran, as a vanpooling service to commuters working in the center-city Philadelphia area.[1] In this service, fifty-five passenger vans owned by COMVAN are utilized daily to transport individuals from the suburbs to center city. Each passenger pays a monthly charge for the transportation.[2] The driver of each van is selected from one of these passengers. Individual drivers of COMVAN do not receive cash payments for their services, but instead, they receive other compensation for driving. More specifically, they get free transportation to and from their place of work since they are not charged the fare that other passengers must pay. In addition, any expenses incurred by the driver, including tickets for violations of the Vehicle Code, are reimbursed by COMVAN. The

---

[1] The record reveals that Ms. Tran purchased the corporation for $230,000.

[2] The average monthly ridership fee was $55 per person.

drivers are given 1800 miles of personal use of their van per year. Each of these remunerations is spelled out in a written contract between COMVAN and each of its drivers.[3] It is important to note that COMVAN pays parking costs, maintains insurance on each of its vans and also finances all repairs and servicing for the upkeep of these vans.

The Commission, in its complaint proceeding, argued that COMVAN was a common carrier as defined by the Public Utility Code and therefore, was required to obtain a Certificate of Public Convenience in order to carry on its operations. COMVAN, on the other hand, argued that their service was within the purview of the recently enacted Ridesharing Act. Judge KRANZEL, in his Initial Decision, found that COMVAN's operation was not a legitimate ridesharing arrangement, but rather, constituted a transportation business which was subject to regulation by the Commission. The Commission, by order entered October 23, 1986, adopted the Initial Decision of Judge KRANZEL dated May 21, 1986, and his ruling on Exceptions dated July 15, 1986.

This Court's scope of review of a Commission order encompasses a determination whether an error of law was committed or whether the findings, determinations or order of the Commission are supported by substantial evidence. *Cohen v. Pa. Public Utility Commission*, 90 Pa. Commonwealth Ct. 98, 494 A.2d 58 (1985).

The case *sub judice* is one of first impression. The issue before this Court is whether COMVAN is a common carrier subject to regulation by the Commission, or, whether the service provided is governed by the Ridesharing Act, and is, therefore, exempt from Commission regulation. Resolution of the instant matter

---

[3] The driver agreements also included limited convenants by the driver not to compete with COMVAN.

requires an examination of the Public Utility Code (Code), 66 Pa. C. S. §101-3301, prior Commission decisions and the Ridesharing Act.

The Commission, pursuant to the Code, maintains jurisdiction to regulate common carriers. 66 Pa. C. S. §2301. Section 102 of the Code defines common carrier as follows:

> 'Common Carrier.' Any and all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the public for the transportation of passengers or property, or both, or any class of passengers or property, between points within this Commonwealth by, through, over, above, or under land, water, or air, and shall include forwarders, but shall not include contract carriers by motor vehicles, or brokers, or any bonafide cooperative association transporting property exclusively for the members of such association on a nonprofit basis.

Prior Commission decisions have held that persons employed at some occupation who incidentally use their automobile to transport to and from the place of employment, fellow employees who contribute to the cost of operating the vehicle, are not "common carriers" within this definition. Therefore, these persons are not subject to the jurisdiction of the Commission. *V. G. Shaut, t/a Shaut's Bus & Taxi Lines v. Dippold,* 22 Pa. Pub. Util. Com. 723 (1941).

In *Shaut,* the respondents transported fellow workers to and from their place of employment in their personal vehicle and accepted payments from each passenger. The respondents did not solicit passengers. The Commission, in ruling for the respondents, found that the Legislature, by providing for the regulation of both common carriers and contract carriers by motor vehicle, sought to regulate these operations offering transporta-

tion for hire when conducted as a *business* and *not* the casual transportation of fellow employees. *Id. See also Orr v. Waltonbaugh*, 22 Pa. Pub. Util. Com. 720 (1941).

The Legislature, on December 14, 1982, enacted the Ridesharing Act. Section one of the Ridesharing Act defines "ridesharing arrangement." The pertinent subsection for purposes of this appeal is Section 1(1) of the Ridesharing Act and reads:

> The transportation of not more than 15 passengers where such transportation is incidental to another purpose of the driver who is not engaged in transportation as a business. The term shall include ridesharing arrangements commonly known as carpools and vanpools, used in the transportation of employees to or from their place of employment.

Section two of the Ridesharing Act, 55 P.S. §695.2, exempts valid ridesharing arrangements from certain Pennsylvania laws and regulations, including, but not limited to, the Public Utility Code.

On examination of the record, it becomes evident that COMVAN's operation does not come within the definition of a "ridesharing arrangement." Instead, it constitutes a common carrier service subject to Commission jurisdiction. COMVAN contends that it should be able to claim the ridesharing arrangement exemption since its drivers are not engaged in "transportation as a business," but instead, are employed in other capacities. Favoring a strict construction of the language of the statute, COMVAN asserts that because its *drivers* are not listed as COMVAN employees and have other jobs of primary import, that COMVAN is, therefore, able to claim exemption from regulation under the Ridesharing Act.

This Court does not dispute that the plain language of a statute cannot be disregarded if it is free and clear

from all ambiguity. *See* Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(a). However, we must recognize another well-established rule of statutory construction which provides that the legislature, in enacting statutes, does not intend a result which is absurd, impossible of execution or unreasonable. 1 Pa. C. S. §1922(1). A literal interpretation of the language of the Ridesharing Act would lead to an absurd and unreasonable result in this case.

The facts in the case *sub judice* are clear. Several former COMVAN drivers testified in the proceeding below that although they were not payroll employees of COMVAN, they did ride free pursuant to a written agreement they had with COMVAN. In addition, each driver's agreement afforded him 1800 miles of personal use of the van as part of his driving position.

The evidence indicates that the drivers are acting as agents of COMVAN, an entity which has been set up in the form of a business. Despite the fact that COMVAN has not yet turned a profit, it clearly intends its service to be profitable in the future. It must be noted that COMVAN retains the right to unilaterally cancel a run which it does not consider "cost effective."[4] COMVAN cannot escape regulation by using its drivers who are "not engaged in transportation as a business" as an extension of its company. These drivers are mere agents of the corporation who receive compensation in the form of free rides to work and the personal use of the vans.

The Ridesharing Act excludes operations wherein the driver is directly engaged in the business of transporting passengers for compensation. It would be absurd and unreasonable to conclude that those same

---

[4] Robert Bond, a former COMVAN driver, testified that COMVAN informed him that it would not continue a run with only nine passengers because it was not economically feasible.

drivers, acting as agents of a third-party provider, could *indirectly* further a transportation business and remain within the ambit of the Ridesharing Act.

The Ridesharing Act was enacted to further carpooling and vanpooling arrangements among private citizens absent *regulation* by the State. There is no clear indication in the legislation that the statute was intended to narrow the jurisdiction of the Commission. It is clear that in enacting statutes the General Assembly intends to favor the public interest as against any private interest. 1 Pa. C. S. §1922(5). COMVAN, a third-party provider of transportation services, is a private for-profit entity which does not fall within the penumbra of the Ridesharing Act.

Furthermore, the Commission is well-supported in its determination that COMVAN's activities qualify them as a common carrier. We note that construction of a statute by those charged with its administration and execution should not be disregarded unless clearly erroneous. *Carol Lines, Inc. v. Pennsylvania Public Utility Commission,* 83 Pa. Commonwealth Ct. 393, 477 A.2d 601 (1984); *Chappell v. Pennsylvania Public Utility Commission,* 57 Pa. Commonwealth Ct. 17, 425 A.2d 873 (1981). COMVAN cannot, by employing artifice, escape regulation. *See Waer v. Pennsylvania Public Service Commission,* 117 Pa. Superior Ct. 514, 178 A. 157 (1935).

Having found that the decision of the Commission is well-founded on substantial evidence in the record and, for all of the above-stated reasons, we must affirm the order of the Commission.

### ORDER

AND NOW, this 12th day of November, 1987, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is affirmed.